**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

JOSE ROBERTO CASANOVA-VIDAL,

      Petitioner,

      v.                                Case No. 2:26-cv-02396-BCL-tmp

CHRISTOPHER BULLOCK,
Field Office Director of U.S. Immigration
and Customs Enforcement, New Orleans
Field Office,

      Respondent.

---

**ORDER DENYING § 2241 PETITION**

---

Petitioner, Jose Roberto Casanova-Vidal, has filed a Petition for Habeas Corpus under 28 U.S.C. § 2241, by which he challenges his detention without an individualized bond hearing. Doc. 1. Contemporaneously, Petitioner embedded multiple separate motions as exhibits to his petition, including:

- Emergency Motion for Temporary Restraining Order (Doc. 1-1)
- Motion for Preliminary Injunction (Doc. 1-3)
- Emergency Motion to Expedite Consideration of Habeas Petition and Pending Motion (Doc. 1-5)
- Motion for Immediate Release Pending Resolution of Habeas Petition (Doc. 1-7)
- Motion for Immediate Bond Hearing with Burden on the Government (Doc. 1-9)
- Motion to Compel Production of ATD Records and Preservation of Electronic Evidence (Doc. 1-11).[1]

---

[1] To the extent it becomes relevant in this or other matters in the future, Counsel is advised to submit each motion as a separate docket entry, instead of embedding multiple motions in the same document or as attachments to a parent document.

Petitioner seeks immediate release or a bond hearing, a declaration that his detention has been unlawful, production of documents concerning the Alternatives to Detention ("ATD") application, and a stay of his removal from the Western District of Tennessee pending resolution of his Habeas Corpus petition. Doc. 1 at 13.

As a preliminary housekeeping matter, the United States Court of Appeals for the Sixth Circuit has held that the "district director"—now the Field Office Director—for the place of confinement is the proper respondent to a Section 2241 petition filed by an alien challenging his confinement. *See Roman v. Ashcroft*, 340 F.3d 314, 320–21 (6th Cir. 2003). Here, that is now Christopher Bullock, Field Office Director for the New Orleans Field Office, United States Immigration and Customs Enforcement. The Clerk is therefore **DIRECTED** to modify the docket to replace Trinity Minter with Christopher Bullock. *See* Fed. R. Civ. P. 25(d). All other respondents are **DISMISSED**.

For the reasons that follow, the Petition for Habeas Corpus (Doc. 1) and the embedded Emergency Motion for Temporary Restraining Order (Doc. 1-1), Motion for Preliminary Injunction (Doc. 1-3), Motion for Immediate Release Pending Resolution of Habeas Petition (Doc. 1-7), Motion for Immediate Bond Hearing with Burden on the Government (Doc. 1-9), and Motion to Compel Production of ATD Records and Preservation of Electronic Evidence (Doc. 1-11) are **DENIED**. The Emergency Motion to Expedite Consideration of Habeas Petition and Pending Motion (Doc. 1-5) is **DENIED AS MOOT**.

## BACKGROUND

Petitioner is a citizen of Peru who entered the United States in November of 2022. Doc. 1 at 4. On January 12, 2023, Petitioner was served with a Notice to Appear charging him with being "an arriving alien" subject to removal. Doc. 1-16 at 1; Doc. 1 at 8. That document reflects that

2

Petitioner was "paroled due to time in custody restraints," then released on the ATD program "as a Condition of Parole." Doc. 1-16 at 6; Doc. 1 at 4.

On December 1, 2025, Petitioner voluntarily appeared at the Memphis office of Immigration after being summoned for allegedly failing to comply with conditions of the ATD program. Doc. 1 at 6. On that day, Petitioner was taken into custody. *Id.* Since that day, Petitioner has been detained at the West Tennessee Detention Facility in this District. *Id.* at 7. He now seeks release or an individualized bond hearing to which he claims to be entitled by law under 8 U.S.C. § 1226(a). *Id.* at 12.

## **LEGAL STANDARD**

Section 2241 authorizes a court to issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An alien seeking to challenge his detention relating to removal proceedings may in some circumstances seek relief through a Section 2241 petition. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Section 2243 directs the judge entertaining an application for a writ of habeas corpus to "forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. The last clause of Section 2243 imposes "a duty to screen out a habeas corpus petition which should be dismissed for lack of merit on its face," as where "the necessary facts can be determined from the petition itself without need for consideration of a return." *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970).

Temporary restraining orders and preliminary injunctions are "extraordinary equitable remed[ies] that [are] never awarded as of right." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain such

3

relief, the movant must "make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.* at 346 (quoting *Winter*, 555 U.S. at 20). "Thus, '[t]he party seeking a preliminary injunction bears the burden of justifying such relief.'" *A.C.L.U. Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)). "If the plaintiff fails to show a likelihood of success on the merits, the court may deny [the motion for a temporary restraining order] without any further consideration." *U.S. Sportsmen's All. Found. v. Ctrs. for Disease Control & Prevention*, 167 F.4th 813, 818 (6th Cir. 2026) (citing *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020)).

## ANALYSIS

To begin, Petitioner's claims fail to the extent they are based on the Administrative Procedure Act ("APA") because 28 U.S.C. § 2241 provides an adequate remedy. As to the habeas claims, Petitioner's failure to exhaust his administrative remedies dooms his statutory claims, which in any event fail on their merits. And Petitioner's detention as required by statute does not violate the Constitution.

**I.      Petitioner's claims under the APA fail because he has an adequate remedy in habeas.**

"The judicial review provisions of the APA provide a limited cause of action for parties adversely affected by agency action." *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014). Importantly, judicial review of final agency action under the APA is only available when "there is no other adequate remedy in a court." 5 U.S.C. § 704. This limitation ensures that "the APA's general grant of jurisdiction to review agency decisions is not duplicative of more

specific statutory procedures for judicial review." *Bangura v. Hansen*, 434 F.3d 487, 501 (6th Cir. 2006).

In this case, habeas corpus provides an adequate remedy for Petitioner's claims. *See Singh v. Noem*, No. 2:25-CV-00157-SCM, 2026 WL 74558, at *7 (E.D. Ky. Jan. 9, 2026); *cf. Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (noncitizens' challenge to confinement and removal under the Alien Enemies Act fell within the "core" of habeas corpus and thus could not be brought under the APA). APA review therefore is inapplicable here, and Petitioner's claims fail to the extent they are based on the APA. For that reason, Petitioner's APA claims are dismissed for failure to state a claim. *See Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 428 (6th Cir. 2016).

**II.     Petitioner's claims challenging application of 8 U.S.C. § 1225.**

**A.  The Exhaustion Doctrine precludes review of Petitioner's statutory claim.**

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). That requirement makes obvious sense when Congress requires exhaustion. It arguably makes less sense when, as in Section 2241, Congress has not done so. Perhaps the so-called prudential exhaustion doctrine—a matter of "sound judicial discretion," *id.*—can be explained as an aspect of ripeness, the idea being that there is no ripe dispute if the Executive Branch has not had its final say. Or perhaps it is a shirking of the federal courts' "virtually unflagging" duty to exercise jurisdiction in cases properly before them. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

In any event, both the Supreme Court and the Sixth Circuit have embraced the doctrine, which is thus binding on this Court. *See, e.g.*, *McCarthy*, 503 U.S. at 144; *Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013). Exhaustion gives an agency "the opportunity to correct its own

mistakes with respect to the programs it administers"; "discourages disregard of the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted).

True, the exhaustion requirement can be excused if exhaustion would be futile. But, as the Sixth Circuit has recently explained, in determining whether exhaustion would be futile, "the crucial inquiry [is] whether the agency can provide the relief requested if the argument succeeds, not whether it is likely to succeed." *Smith v. U.S. Sec. & Exch. Comm'n*, No. 24-3907, 2026 WL 850806, at \*7 (6th Cir. Mar. 27, 2026).[2] And, here, while an individual immigration judge may be bound by the *Yajure Hurtado* decision cited by Petitioner, the Board of Immigration Appeals ("BIA") could certainly grant petitioner a bond hearing or release on bond if he were to prevail on his claims; indeed, the whole theory of his claims is that the law compels the immigration judge to give him such a hearing (and not, say, that the federal courts should be stepping in to run bond proceedings on a categorical basis). And while Petitioner suggests that an exception to the exhaustion requirement is warranted by the fact that he is imprisoned or the possibility that allegedly exculpatory evidence may be destroyed while he seeks an administrative remedy, neither *McCarthy* nor *Ly v. Hansen*, 351 F.3d 263, 268 (6th Cir. 2003) provide authority for that proposition, which would both (1) swallow the general requirement for exhaustion for aliens challenging their removal or detention relating thereto, and (2) run contrary to the presumption of regularity to which Government agencies are entitled by law, *see U.S. Postal Service v. Gregory*,

---

[2] *Smith* addressed the futility exception in the context of an express exhaustion requirement that excepted situations in which "there was reasonable ground for . . . failure to" exhaust. 2026 WL 850806, at \*5 (quoting 15 U.S.C. § 78y(c)(1)). That makes no difference: There is no logical reason for treating the concept of futility differently in the context of a prudential rule than in the context of a statute with a generally worded exception that encompasses the concept of futility.

534 U.S. 1, 10 (2001). Petitioner's statutory claims are thus barred by the exhaustion doctrine and due to be rejected for that reason alone.

> **B. Under the governing statutes, Petitioner is an "applicant seeking admission" subject to mandatory detention.**

Even if they were not barred by the exhaustion doctrine, Petitioner's statutory claims fail on the merits. Petitioner's statutory eligibility for a bond hearing is determined by whether his detention is governed by 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a). Section 1225(b)(2) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). In contrast, Section 1226(a) provides, in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
>
> **(1)** may continue to detain the arrested alien; and
>
> **(2)** may release the alien on--
>
> > **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > **(B)** conditional parole . . . .

8 U.S.C. § 1226(a)(1)–(2).

Thus, Petitioner was (and remains) an "applicant for admission" subject to mandatory detention under Section 1225(b)(2). "Congress defined 'applicant for admission' broadly in Section 1225(a)(1) to include all 'alien[s] present in the United States who have not been admitted.'" *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 504 (5th Cir. 2026); *see* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought

to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.").[3] That definition encompasses Petitioner because he is present in the United States without ever having been legally admitted. *See* Doc. 2-1 at 7; *Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *4 (8th Cir. Mar. 25, 2026). The passage of time makes no difference. Unless and until Petitioner is granted authorization and lawfully admitted into the United States, he remains an "applicant for admission." As such, the Petitioner's detention during removal proceedings was mandatory under Section 1225(b)(2).

Petitioner implicitly concedes that "arriving aliens" and "applicants for admission" are subject to Section 1225(b)(2), because he frames his argument on the idea that Department of Homeland Security ("DHS") *de facto* approved his admission by releasing him on "parole" under Section 1226. Doc. 1 at 10. Petitioner's argument is without merit. His participation in the ATD program makes no difference because he was released as an "arriving alien." Doc. 1-16 at 1. That designation acknowledges that Petitioner fell into what he concedes is well within the heartland of Section 1225(b)(2), with its mandate of mandatory detention—which does not allow for release under Section 1226. Doc. 1 at 10. *See Gonzales v. Bondi*, No. CV 26-0747 (SDW), 2026 WL 323355, at *2 (D.N.J. Feb. 6, 2026) (citing *Martinez v. Hyde*, 792 F. Supp. 3d 211, 221 (D. Mass. 2025)). An improper parole into the United States in contravention of a statutory requirement of mandatory detention, expressly due only to "time in custody restraints," does not amount to lawful admission into the United States. Petitioner's statutory challenge to his detention therefore fails.

---

[3] Statutory language underscores the point in providing that "'admission'. . . mean[s], with respect to an alien, the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13) (emphasis added). Until his entry into the United States is lawful, Petitioner remains an "applicant for admission," and thus his detention during removal proceedings is mandatory under Section 1225(b)(2). *See Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *2 (8th Cir. Mar. 25, 2026).

III.     **Subjecting Petitioner to mandatory detention as required by a faithful interpretation of Section 1225 did not violate the Due Process Clause.**

The exhaustion doctrine does not bar review of Petitioner's constitutional claims because the BIA cannot adjudicate them. *See Smith*, 2026 WL 850806, at *7; *Bangura*, 434 F.3d at 494 (citations omitted). Therefore, the Court will not require exhaustion. But those claims also fail on the merits.

Petitioner claims that his detention violates the Due Process Clause because he is detained on a "false factual predicate," he is being denied access to exculpatory evidence, and he has not received a bond hearing. Doc. 1 at 9. The Court disagrees.

"[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–101 (1903)). But, when a noncitizen has not been lawfully admitted to the United States, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law" because such noncitizens have "only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138, 140 (2020). This is the result of "the so-called 'entry fiction' theory of immigration law," under which "[a]liens who have not 'entered the United States within the meaning of the law,' i.e., who were never lawfully admitted and do not have leave to remain, are 'still in theory of law at the boundary line,'" *Gonzalez v. Ladwig*, No. 2:26-cv-02017-MSN-atc, 2026 WL 413602, at *11 (W.D. Tenn. 2026) (Norris, J.) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925)), where they have only those rights provided by Congress. *See Thuraissigiam*, 591 U.S. at 140. Here, Congress did not provide a right to a bond hearing. 8 U.S.C. § 1225(b)(2)(A). And even if there were such a constitutional right after detention of some outer length, Petitioner has cited

9

no authority supporting the idea that his detention of four months would fall on the unconstitutional side of that line.

Petitioner's remaining contentions citing Due Process are meritless. Because a statute mandated his detention, Petitioner cannot obtain release or a bond hearing based on claimed irregularities in the ATD process that allowed release in contravention of the statutory mandate. Doc. 1 at 5, 8. And similarly, a lack of access to potentially exculpatory evidence does not matter if detention is mandated by statute.

In sum, neither the governing statutes nor the Constitution guarantee Petitioner an individualized bond hearing in connection with removal proceedings. Those claims therefore do not support the Petition or the Motion. Accordingly, it is apparent from the application that Petitioner is not entitled to the writ. 28 U.S.C. § 2243.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 2) and the embedded Emergency Motion for Temporary Restraining Order (Doc. 1-1), Motion for Preliminary Injunction (Doc. 1-3), Motion for Immediate Release Pending Resolution of Habeas Petition (Doc. 1-7), Motion for Immediate Bond Hearing with Burden on the Government (Doc. 1-9), and Motion to Compel Production of ATD Records and Preservation of Electronic Evidence (Doc. 1-11) are **DENIED.** The Emergency Motion to Expedite Consideration of Habeas Petition and Pending Motion (Doc. 1-5) is **DENIED AS MOOT**. The Clerk is **DIRECTED TO CLOSE THIS CASE**.

**IT IS SO ORDERED**, this 15th day of April, 2026.

s/ *Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE

10